UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Sleeper Village, LLC**

    **v.**
                               Case No. 09-cv-44-PB
                                       Opinion No. 2010 DNH 064

**NGM Insurance Co.**


MEMORANDUM AND ORDER


Sleeper Village, LLC, the owner of a residential housing development project, has filed a petition for declaratory judgment and damages seeking to recover on a performance bond issued by NGM Insurance Company.  NGM contends that it is entitled to summary judgment for two reasons.  First, it argues that Sleeper Village is not entitled to recover because it failed to comply with Section 3.3 of the bond, which specifies that an owner's declaration of contractor default does not become effective unless the owner agrees to pay the contract's unpaid balance either to the surety or a contractor selected to complete the project.  Next, it argues that Sleeper Village failed to fulfill its obligations under Section 5 of the bond, which in most cases obligates the owner to submit a separate written

notice to the surety stating that the surety is in default and
demanding that the default be corrected.  I address each argument
in turn.

## I.   Section 3.3

Section 3.3 of the performance bond states that a surety's
obligation under the bond does not arise until, among other
things, the owner "has agreed to pay the Balance of the Contract
Price to the Surety in accordance with the terms of the
Construction Contract or to a contractor selected to perform the
Construction Contract in accordance with the terms of the
Contract with the Owner."  (Def.'s Mot. for Summ. J. Ex. 2, Doc.
No. 10-3, § 3.3.)  NGM argues that Sleeper Village did not comply
with this provision because it never explicitly agreed to pay the
balance of the contract price to a new contractor.
Alternatively, it argues that Sleeper Village failed to comply
with Section 3.3 because it failed to specifically identify the
balance of the contract price that was available to fund the
completion of the contract.  Neither argument is persuasive.

On April 9, 2007, Sleeper Village wrote to Moulton
Construction, Inc., the contractor on whose behalf NGM had issued
the performance bond, declaring a contractor default and

-2-

terminating the contractor's right to complete the bonded

project.[1]  (See Def.'s Mot. for Summ. J. Ex. 6, Doc. No. 10-7, at

2-3.)  Sleeper Village's attorney forwarded this letter to NGM's

attorney with a cover letter that (1) referred to Section 3.3 and

included language that, although not in quotation marks, was

directly taken from that section; (2) informed NGM that it had

identified a contractor that was willing to complete the

contract; and (3) stated that Sleeper Village was "prepared to

execute a construction contract for the completion of the work at

its earliest convenience."  (Def.'s Mot. for Summ. J. Ex. 6, Doc.

No. 10-7, at 1.)  Although the cover letter does not precisely

track the language of Section 3.3, it is clear that Sleeper

Village was agreeing to pay the balance of the contract price to

a contractor selected to perform the contract.  There is no doubt

that NGM recognized that this was Sleeper Village's intention

because an NGM attorney stated, in response to the notice of

---

[1]  Sleeper Village provisionally wrote to NGM on January 30,
2007 to notify it that it was considering declaring a contractor
default.  Thereafter, Sleeper Village arranged a conference with
NGM and the contractor to discuss methods of performing the
contract.  The undisputed facts thus establish that Sleeper
Village complied with its obligation under the bond to notify the
surety that it was considering declaring a contractor default.

contractor default, "I construe the intent of your letter as a
declaration of Contractor Default as well as Sleeper Village
pledging contract balances for the completion of the project, but
you have not stated so in your letter . . . ."  (Def.'s Mot. for
Summ. J. Ex. 10, Doc. No. 10-11, at 1.)  Under these
circumstances, NGM is in no position to fault Sleeper Village for
failing to make its intentions clear.

     With regard to NGM's second argument, although Sleeper
Village did not disclose the balance of the contract price in its
notice of default, the performance bond does not obligate it to
do so.  Thus, Sleeper Village did not violate Section 3.3 by
failing to disclose the unpaid balance on the contract.

**II.  <u>Section 5</u>**

     When a contractor default is declared, a surety may:  (1)
arrange for the contractor to complete the project with the
owner's consent; (2) complete the project itself; or (3) obtain
bids from other contractors and arrange for the owner to contract
with a new contractor to complete the project.  (<u>See</u> Def.'s Mot.
for Summ. J. Ex. 2, Doc. No. 10-3, § 4.)  Alternatively, the
surety may waive its right to exercise these options and either
pay the balance owed directly to the owner or deny liability and

provide a statement of reasons.  (See id.)  In the event that the

surety fails to act on a notice of contractor default with

reasonable promptness, Section 5 provides that "the Surety shall

be . . . in default on this Bond fifteen days after receipt of an

additional written notice from the Owner to the Surety demanding

that the Surety perform its obligations under this Bond . . . ."

(Id. § 5.)  Section 5 further specifies, however, that the

additional written notice requirement does not apply in the event

that the surety waives its right to alternative remedies and

either denies liability or pays what it owes directly to the

owner.

NGM invokes Section 5 in arguing that it is entitled to

summary judgment.  Sleeper Village responds by claiming that

Section 5 did not obligate it to provide a notice of surety

default because NGM waived its right to alternative remedies and

agreed to pay the amount owed directly to Sleeper Village.  I

agree with NGM.

Although Sleeper Village's attorney's April 9, 2007 cover

letter regarding the notice of contractor default suggests that

the "most appropriate route" would be for NGM to waive its right

to alternative remedies and pay the amount owed on the bond

-5-

directly to Sleeper Village, NGM's attorney's response clearly

states, "I cannot agree or disagree that [waiver of alternative

remedies] is the most appropriate route."  (Def.'s Mot. for Summ.

J. Ex. 6, Doc. No. 10-7, at 1; Def.'s Mot. for Summ. J. Ex. 10,

Doc. No. 10-11, at 2.)  The response further states, "So there is

no misunderstanding, [NGM] is not waiving any rights it may have

. . . under either the construction contract or its bond, or by

law, regardless of whether Sleeper Village decides it wishes to

terminate [the contractor] and hire a new contractor to complete

the project."  (Def.'s Mot. for Summ. J. Ex. 10, Doc. No. 10-11,

at 3.)  Under these circumstances, it is quite clear that NGM did

not waive its right to alternative remedies.  Thus, Section 5

obligated Sleeper Village to issue a notice of surety default

before exercising its rights under the bond.


### CONCLUSION

   NGM is entitled to partial summary judgment with respect to

its contention that Sleeper Village failed to provide the notice

of surety default required by Section 5 of the bond.  I cannot

say what effect, if any, this failure has on Sleeper Village's

right to relief because this issue has not been properly
briefed.[2]

The court will hold a status conference to set up a briefing
schedule on May 3, 2010 at 3:00 p.m.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


April 9, 2010

cc:  Howard Meyers, Esq.
     James Owers, Esq.

---

[2]  NGM contends that a failure to provide a surety default
notice when one is required voids the bond.  I decline to address
this issue at the present time and instead invite the parties to
submit additional briefing on the issue.  Among the authorities
that the parties should consider are:  4A Philip L. Bruner &
Patrick J. O'Connor, Bruner & O'Connor on Construction Law
§ 12:74 (West 2010); Paisner v. Renaud, 149 A.2d 869, 871 (N.H.
1959); St. Paul Fire & Marine Ins. Co. v. City of Green River, 93
F. Supp. 2d 1170, 1178-79 (D. Wyo. 2000); Kilpatrick Bros. Paving
v. Chippewa Hills Sch. Dist., No. 262396, 2006 WL 664210 (Mich.
Ct. App. Mar. 16, 2006).